UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARAH JARRETT,

       Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____/

Civil Action No.
05-CV-71692-DT

HON. BERNARD A. FRIEDMAN

**OPINION AND ORDER REJECTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION, DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT, GRANTING IN PART PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT and REMANDING CASE
FOR FURTHER PROCEEDINGS**

This matter is presently before the court on cross motions for summary judgment. Magistrate Judge Virginia Morgan has submitted a report and recommendation in which she recommends that the court grant defendant's motion and deny plaintiff's motion. For the following reasons, the court shall reject the report and recommendation, deny defendant's motion for summary judgment, grant in part plaintiff's motion for summary judgment, and remand the matter for further administrative proceedings.

Plaintiff commenced suit pursuant to 42 U.S.C. § 405(g) to challenge a final decision of defendant Commissioner of Social Security denying her application for Social Security disability insurance benefits. An administrative law judge found that plaintiff has "degenerative disc disease of the cervical and lumbar spine, Baker's cysts of both knees, carpal tunnel syndrome and major depressive disorder" (Tr. 24) but that she is not disabled under the statute because she is able "to perform a significant range of sedentary work" (Tr. 31). The magistrate judge believes this finding

is supported by substantial evidence and that defendant is therefore entitled to summary judgment.

In a case such as this, the court's role is limited under § 405(g) to determining whether defendant's decision is supported by substantial evidence. In making this determination, the court does not review the evidence *de novo*, and it may not weigh the evidence or make credibility findings. If supported by substantial evidence, defendant's decision must be upheld even if substantial evidence also would have supported a contrary decision.

Plaintiff does not challenge the finding that she is *physically* capable of performing a limited range of sedentary work. Rather, in her objections plaintiff contends that her *mental* impairments prevent her from doing so and that the ALJ's hypothetical question failed to accurately describe those impairments. The court agrees and believes that remand is required so that further VE testimony, based on one or more proper hypothetical questions, may be obtained. In addition, remand is necessary in this case because the ALJ failed to comment on, and may therefore have been unaware of, certain significant medical reports which are contained in the record.

Taking the errors in reverse order, the court notes that the ALJ adopted by reference a previous ALJ's summary of the medical evidence through March 23, 1998 (Tr. 24). Following that date, the evidence of plaintiff's mental impairments is contained in the following exhibits:

| <u>Exhibit No.</u> | <u>Medical Record</u> | <u>Tr. Pages</u> |
|---|---|---|

| B-16F | Psychiatric medical report of Dr. Peter Smith, M.D. (dated 9-3-98) | 244-250 |
| B-16F | Retirement system physician's statement of disability by Dr. Albert (dated 3-26-98) | 255-256 |
| B-21F | Report of Dr. Dr. Ronald Bradley, D.O. (dated 2-12-99) | 278-280 |
| **B-22F** | **Report of Dr. Edward Klarman, M.D. (dated 2-18-99)** | **281-289** |
| **B-23F** | **Saginaw County Community Mental Health Authority records (dated 2-2-00, 1-31-00, 11-8-99, 7-19-99, 4-19-99, 7-1-99, 10-6-98, 12-12-97, 10-6-97, 8-6-97)** | **290-330** |
| B-25F | Mental residual functional capacity assessment (dated 8-14-00) | 344-346 |
| B-26F | Psychiatric Review Technique (dated 8-14-00) | 348-357 |
| B-33F | Saginaw County Community Mental Health Authority records (dated 8-13-01, 8-3-01, 5-7-01, 2-2-01, 12-6-00) | 458-475 |
| B-38F | Saginaw Community Mental Health records (dated 12-3-01, 1-17-02, 1-2-02, 12-18-01, 12-17-01) | 491-499 |

Of these exhibits, the ALJ's written decision reviewed only the highlighted ones, B-22F and B-23F. The ALJ did not mention or even allude to the other exhibits, B-16F, B-21F, B-25F, B-26F, B-33F. The ALJ did mention exhibit B-38F, but disregarded it on the grounds that he, without explaining his basis for doing so, "determined that this questionnaire was completed by the claimant and does not give any credence to it" (Tr. 27).

The exhibits which were not mentioned in the ALJ's decision contain significant evidence concerning plaintiff's mental impairments. Exhibit B-16F is a report dated 9-3-98 by psychiatrist Peter Smith, M.D., who diagnosed "major depressive disorder" and appears to have

given plaintiff a GAF score of 51 (Tr. 249).[1]  This exhibit also contains a statement by a Dr. Albert, M.D., who diagnosed "chronic depression" and gave plaintiff a poor prognosis (Tr. 255).

Exhibit B-21F is a February 1999 report by Dr. Ronald Bradley, D.O., who reviewed plaintiff's medical records and noted "a fair amount of depression that is interpreted by a psychologist and psychiatrist" and "Global assessment functioning scale appears to be in the 50 range" (Tr. 279).

Exhibits B-25F and B-26F are Mental Residual Functional Capacity Assessment and Psychiatric Review Technique forms, apparently completed by a physician employed by the state disability determination service in August 2000 (Tr. 344-357).  On these forms, the physician indicated that plaintiff has "major depression" (Tr. 351), and that she has "moderate" "[d]ifficulties in maintaining social functioning and "often" has "[d]eficiencies of concentration, persistence or pace resulting in failure to compete tasks in a timely manner" (Tr. 355).

---

[1] As this court explained in *Edwards v. Barnhart*, 383 F.Supp.2d 920, 924 n.1 (E.D. Mich. 2005:

> The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, (4th ed.1994) at 30. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *See id.* at 32. A GAF score of 31-40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." *Id.* A GAF of 41 to 50 means that the patient has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." *Id.* A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning. *Id.*

Exhibit B-33F consists of records from the Saginaw County Community Mental Health Authority, covering the period from December 2000 to August 2001 (Tr. 458-475). These records indicate a diagnosis of "major depression" and a GAF score of 52 (Tr. 458); and "major depression with psychotic features" (Tr. 465, 468, 469).

Exhibit B-38F consists of additional records from Saginaw Community Mental Health from December 2001 and January 2002 (Tr. 491-499). The first three pages are a form entitled "Medical Assessment of Ability to Do Work Related Activities (Mental)" on which the "markedly limited" box is checked in each of 20 items under the categories "understanding and memory," "sustained concentration and persistence," "social interaction," and "adaptation" (Tr. 491-93). As noted above, the ALJ stated in his decision that "on close inspection the undersigned has determined that this questionnaire was completed by the claimant and does not give any credence to it" (Tr. 27). However, the ALJ does not explain the basis of this determination. Nor is the basis apparent on the face of the document, which appears to be the first three of nine pages of records obtained from Saginaw Community Mental Health (*see* Tr. 491). The hand-written notes on the third page of this form ("Client had a difficult time with working on questionnaire. Dx - Major depression severe") appear to be written in the same handwriting as the social worker's signature on pages 5, 6, 7 and 8, of these records (Tr. 495-498). The ALJ did not comment on, or reject as having been written by plaintiff, the remaining pages of this exhibit, which state a diagnosis of major depression with psychotic features and report that plaintiff claimed to hear voices and see her deceased husband (Tr. 494).

Where, as in the present case, the ALJ's decision fails to mention significant medical evidence, the commissioner has failed to perform its duty to fully and fairly develop the record and

5

to make findings based on such a record.  Even the commissioner's regulations state: "After we review *all of the evidence relevant to your claim*, including medical opinions, we make findings about what the evidence shows" and "Administrative law judges are responsible for *reviewing the evidence* and making findings of fact and conclusions of law."  20 CFR §§ 404.1527(c), (f)(2) (emphasis added). It is not for the court to say whether the exhibits overlooked by the ALJ will, once considered, lead the ALJ to a different conclusion on plaintiff's disability claim.  However, the court cannot determine whether the decision in this matter is supported by substantial evidence until it is clear that the ALJ was aware of and considered all of the evidence.  Remand is required in order to give the ALJ an opportunity to review the entire record and to make findings accordingly.

Remand is also required so that the ALJ may explain the basis for his finding that the first three pages of Exhibit B-38F (the Medical Assessment of Ability to Do Work Related Activities, Tr. 491-493) was "completed by the claimant" (Tr. 27).

Remand is also required because the hypothetical question put to the vocational expert was flawed.  The ALJ's hypothetical question asked the VE to assume

> that she could perform sedentary work, but she'd require a job with lifting not exceeding five pounds, with a sit/stand option, no bending, twisting, or turning, no crawling, squatting, kneeling, or climbing, no repetitive pushing or pulling, gripping or grasping, *no production line work, and there would be need to be simple, repetitive work with limited contact with the public and coworkers*.

(Tr. 522-23; emphasis added)  In response to this question, the VE identified several thousand sedentary, unskilled jobs which such a person could perform.

As noted above, plaintiff apparently concedes that she is *physically* capable of performing a limited range of sedentary work. However, plaintiff contends that she is *mentally* unable to do so and that the hypothetical question did not accurately portray these limitations. Therefore, it is the highlighted clause of the hypothetical question that is at issue.

Since the ALJ found that plaintiff cannot perform her past work, the burden has shifted to the commissioner to demonstrate the existence of other work she can perform. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [plaintiff's] individual physical and mental impairments." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). *Accord Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001).

The problem with the ALJ's hypothetical question is two-fold. First, it is based on the ALJ's assessment of plaintiff's mental residual functional capacity which itself, for the reason just indicated, is not supported by substantial evidence. The ALJ stated: "The evidence establishes that the claimant's mental impairments causes [sic] mild restriction of activities of daily living and moderate difficulties in her ability to maintain social functioning. Moreover, they cause moderate deficiencies of concentration, persistence or pace, but have caused no episodes of decompensation" (Tr. 28). Because the ALJ did not mention, and may therefore have been unaware of, several medical records which address plaintiff's mental impairments, the ALJ's RFC assessment is, at a minimum, incomplete as it is based on only part of the medical evidence. As noted above, there is evidence in the record, which the ALJ apparently did not consider or rejected without explanation, indicating that plaintiff has a GAF rating as low as 51; that her depression is not only major but also

severe, chronic and with psychotic features; and that she is "markedly limited" in all areas related to "understanding and memory," "sustained concentration and persistence," "social interaction," and "adaptation." The ALJ must at least consider this evidence, along with all other evidence of record, before the court can review his RFC finding.

The second problem with the hypothetical question is the "disconnect" between the ALJ's RFC finding and his translation of that finding into the highlighted clause. The ALJ's RFC findings of "mild restriction of activities of daily living," "moderate difficulties in her ability to maintain social functioning," and "moderate deficiencies of concentration, persistence or pace, but . . . no episodes of decompensation" was not presented to the vocational expert. Rather, the ALJ asked the VE to assume "no production line work, and there would be need to be simple, repetitive work with limited contact with the public and coworkers." There is no logical or evidentiary basis, either apparent or explained, for equating the identified "moderate deficiencies" with proscribing or prescribing certain types of work. It is for the ALJ to make an RFC finding, and it is for the VE to testify as to the vocational significance of that finding. In the present case, the ALJ conflated the two and usurped the function of the VE by himself determining the vocational significance of plaintiff's mental impairments. In effect the ALJ asked the VE whether any unskilled, sedentary, non-production line work exists, which is a question that assumes its own answer. Instead, the ALJ should have asked the VE to assume all of the mental and physical impairments and other vocationally significant factors the ALJ finds to be supported by the record, and to testify as to the jobs, if any, which such a person could perform. "A hypothetical question posed to the VE should include specific job-related restrictions, rather than broad limitations or categorical terms." *Edwards v. Barnhardt*, 383 F.Supp.2d 920, 929 (E.D. Mich. 2005).

This is not a case like *Smith v. Halter*, 307 F.3d 377 (6th Cir. 2001), where the ALJ asked a similar hypothetical question. In *Smith*, unlike the present case, the ALJ "develop[ed] a complete and accurate assessment of [plaintiff's] mental impairment, as *Varley* requires." *Id*. at 379. In addition, "the ALJ relied on the testimony of four physicians who characterized [plaintiff's] concentration problems as minimal or negligible" *id.*, which is not the case here. Just as in *Edwards*, the ALJ's hypothetical question in the present case does "not fully convey Plaintiff's limitations," 383 F.Supp.2d at 930, and, also as in *Edwards*, remand is required so that a properly framed hypothetical question may be put to the VE.

On remand the commissioner should also obtain updated medical records regarding plaintiff's mental impairments, as so much time has elapsed since the ALJ's March 2002 decision. Accordingly,

IT IS ORDERED that Magistrate Judge Morgan's Report and Recommendation is rejected.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted in part as follows: the case is remanded for further proceedings to correct the defects identified above

and to supplement the record with updated evidence of plaintiff's mental impairments. This is a "sentence four" remand pursuant to 42 U.S.C. § 405(g).

_____s/Bernard A. Friedman_____
Dated: February 23, 2006         BERNARD A. FRIEDMAN
       Detroit, Michigan         CHIEF UNITED STATES DISTRICT JUDGE

**I hereby certify that a copy of the foregoing document was served this date upon counsel of record electronically and/or via first-class mail.**

**_____/s/ Patricia Foster Hommel_____
          Patricia Foster Hommel
       Secretary to Chief Judge Friedman**